JOURNAL ENTRY AND OPINION
Appellant, Yvonne Rodenberger, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting the motion of appellee, Cuyahoga County Department of Children and Family Services (CCDCFS) for permanent custody of appellant's four minor children, Brendan, Nicholas, Brandy and Corey Rodenberger. For the reasons that follow, we affirm.
On July 9, 1999, CCDCFS filed a dependency complaint with a prayer for permanent custody and a motion for pre-adjudicatory temporary custody of appellant's four children. On July 21, 1999, the trial court granted CCDCFS temporary emergency custody of the children. The matter was set for hearing on September 29, 1999.
On that day, counsel for CCDCFS informed the court that on August 30, 1999, appellant had signed a statement in which she permanently surrendered her parental rights to her children. Counsel for appellant, however, informed the court that appellant now wished to retract the statement and be reunited with her children. After discussion, counsel for both parties agreed to allow appellant to retract her statement and proceed to trial on the complaint of CCDCFS for permanent custody.
Trial commenced on October 28, 1999. Yasmin Parker, the CCDCFS social worker assigned to the case, testified that in 1992, CCDCFS had filed a neglect complaint regarding appellant's children as a result of appellant's drug abuse. At that time, the court adjudged the children neglected and CCDCFS obtained custody of the children. A case plan which required that appellant address issues involving substance abuse and domestic violence committed by her ex-husband, John Rodenberger, the children's biological father, was developed for appellant.
The children were placed with various relatives. Eventually, in July, 1998, Jack and Susan Schoenfeld, appellant's maternal uncle and aunt, obtained legal custody of appellant's children. The children stayed with the Schoenfelds until December, 1998, when Susan Schoenfeld asked CCDCFS to again assume custody of the children because her husband was dying of cancer and she was unable to adequately care for him and the children. On January 5, 1999, the children were placed in the foster care of Jimmy and Flora Lovett, who resided in Bucyrus, Ohio.
Parker testified that appellant's case plan was amended in January, 1999, when appellant informed CCDCFS that she wished to be reunited with her children. Appellant's case plan required that she: 1) attend parenting classes; 2) have a psychological evaluation done and follow its recommendations; 3) obtain counseling regarding domestic violence; 4) attend Alcoholics Anonymous (AA) meetings and submit to random urine screens; and 5) obtain stable employment and housing.
Parker testified that appellant had not worked since she lost her job in September 1999. Parker testified further that appellant had not presented Parker with any evidence that she had been attending weekly AA meetings or receiving ongoing counseling for her drug abuse, as required by her case plan, nor attending individual counseling sessions regarding her victimization and anger management issues, as recommended in the report regarding appellant's psychological evaluation.
Parker testified that appellant's last drug screen was on August 27, 1999 and the test was negative. Parker also testified, however, that although she had attempted several times after August 27 to schedule appellant for random urine screenings, as required by the case plan, appellant had not made herself available for such screenings. Parker also testified that appellant had told her that she was using again.
Parker testified that she witnessed appellant sign the document stating that she wished to permanently surrender all of her rights to her children. According to Parker, appellant was not asked or forced to sign the document and understood what it meant to surrender all of her rights to her children.
Parker testified that she spoke with appellant's children several days after appellant signed the document. The children informed Parker that appellant had bade them goodbye before signing the document. According to Parker, the children seemed relieved because the decision regarding their future had been finally decided.
Parker testified that upon being placed in foster care, all of appellant's children initially exhibited severe behavioral problems, including defecating on themselves, cruelty to animals, aggressive behavior toward each other and lying and stealing. All of the children were receiving intensive counseling, however, and were responding well. Because appellant had bid the children goodbye in August, their counselor had recommended that they not visit with appellant again. In addition, the counselor had stated that the children needed to be in a stable and secure environment.
Parker testified that from December 1997 until August 1998, appellant visited her children only twice. Appellant's whereabouts were unknown from August 1998 until January 1999, when appellant appeared at the CCDCFS office and informed CCDCFS that she wanted to be reunited with her children. According to Parker, appellant's residence had changed frequently since January 1999. In the ten months prior to trial, appellant had lived for a short while with her grandmother, then with her mother and at the time of trial, appellant was living with her aunt, Susan Schoenfeld.
Parker testified that it would not in the best interest of the children to change residences so frequently. She testified further that based on appellant's lack of compliance with the case plan and persistent failure to obtain stable employment and housing, she believed appellant was not in a position to be reunited with her children either at that time or in the near future. Parker testified that the children's biological father had made no efforts to reunite himself with the children. Parker recommended that the children be placed in the permanent custody of CCDCFS so they could be placed for adoption.
Susan Schoenfeld testified that appellant had been living with her since October 7, 1999. Schoenfeld testified that she would not charge appellant any money to live with her and would help her get to whatever meetings she needed to attend to comply with her case plan because she just want[ed] [appellant] to work, save her money, get herself an apartment, and show good faith. * * * I want her to prove to herself and to everybody else that she can do this. Schoenfeld admitted, however, that appellant had no money and no driver's license and to date, had not demonstrated that she could take care of her children. Schoenfeld also testified that appellant was not presently attending parenting classes or AA meetings. Finally, Schoenfeld testified that she had observed serious behavioral problems in all of appellant's children when they lived with her.
Appellant testified at trial that she began using alcohol and cocaine at twelve years of age and was a drug addict, but that she had now been sober since February 24, 1999. Appellant admitted that she had been in jail for three weeks in February, 1999, serving time for solicitation and miscellaneous traffic tickets.
According to appellant, she last saw her children in August, 1998, when she had a supervised visit with them at Geauga Lake Amusement Park. At the conclusion of the visit, the children's foster mother, Flora Lovett, took appellant and the children home to the Lovett's home in Bucyrus. Appellant testified that she stayed there with the children for two days. Appellant testified that while she was there, she told the children of her decision to relinquish her parental rights. Lovett then drove appellant to CCDCFS in Cleveland, where appellant signed the document relinquishing her rights to her children. Appellant testified that Parker explained to her the significance of what she was doing before she signed the document but appellant realized after signing that she had made a mistake in signing the document.
On cross-examination, appellant testified that she was not under the influence of alcohol or drugs when she signed the document and stated, It wasn't forced upon me to sign it. Appellant also admitted that she was not financially capable of taking care of her children but asserted that she was starting a new job the next day at a wage of $6.75/hour and she and her children could live with Susan Schoenfeld for awhile. Appellant also asserted that she had not taken any random drug tests because Parker had not called her to schedule any tests.
Flora Lovett testified that when appellant informed CCDCFS that she wanted to be reunited with her children, she and her husband, Jimmy, worked toward that goal by taking the children to scheduled visits with appellant in Cleveland. Lovett testified that she took appellant home with her after the August visit to Geauga Lake because appellant told her that her mother had kicked her out of the house and stolen her money and she had no place to go.
Flora testified that during the weekend appellant spent at her home, appellant told her children goodbye and also told Flora that she was using again. Lovett testified further that after appellant signed the document relinquishing her rights to her children, appellant told Lovett that she was glad she did not have to go to parenting classes anymore.
Finally, Jimmy Lovett testified that all of appellant's children had behavioral problems, including bed-wetting and violence toward animals and each other. Lovett testified that he was out of town during the weekend appellant spent at his home but that he had a thirty-minute telephone conversation with her that weekend. According to Lovett, he advised appellant to fight for her children so she would have no regrets later in her life.
On November 1, 1999, after the hearing, the guardian ad litem submitted a written report to the court recommending that permanent custody of the children be granted to CCDCFS.
On January 4, 2000, the juvenile court entered an order finding the children to be neglected and committing the children to the permanent custody of CCDCFS.
Appellant timely appealed, raising three assignments of error:
 I. THE DISPOSITIONAL ORDER OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF APPELLANT'S CHILDREN TO THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES WAS BASED UPON INSUFFICIENT EVIDENCE AS TO THE BEST INTERESTS OF EACH INDIVIDUAL CHILD.
 II. THE APPELLEE VIOLATED OHIO REVISED CODE 2153.353 BY FAILING TO MAKE REASONABLE EFFORTS TO ELIMINATE THE CONTINUED REMOVAL OF APPELLANT'S CHILDREN FROM HER AND BY FAILING TO MAKE IT POSSIBLE FOR THE CHILDREN TO RETURN HOME.
 III. APPELLANT WAS DEPRIVED OF HER RIGHT TO DUE PROCESS OF LAW AS PROTECTED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN THE APPELLEE'S AGENTS UNDULY INFLUENCED HER TO SIGN A DECLARATION FORM STATING THAT SHE RELINQUISHED CUSTODY OF HER CHILDREN TO CCDCFS.
In her first assignment of error, appellant contends that the trial court erred in granting permanent custody of her children to CCDCFS because CCDCFS failed to prove by clear and convincing evidence that permanent custody was in the childrens' best interest.
The termination of parental rights in a natural child, when the child is neither abandoned nor orphaned, is governed by R.C. 2151.414(B), which provides that a court may grant a motion for permanent custody if the court determines, by clear and convincing evidence, that 1) it is in the best interest of the child to grant permanent custody of the child to the agency; and 2) the child cannot be placed with either of his parents within a reasonable period of time or the child should not be placed with his parents.
R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents:
 In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a 1 Clear and convincing evidence is defined as [t]hat measure or degree of proof which is more than a mere `preponderance of evidence' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. Lansdowne v. Beacon Journal Publishing Co. (1987), 32 Ohio St.3d 176, 180-181. reasonable time or should not be placed with either parent.
The statute then lists various factors for the court to consider, including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. * * *;
 (2) Chronic mental illness, chronic emotional illness * * * that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *;
 (3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect * * * or allowed the child to suffer any neglect * * *;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * *
(16) Any other factor the court considers relevant.
Once the trial court finds from all relevant evidence that one of the factors exists and the child cannot or should not be placed with either of his parents, it then must consider whether permanent custody is in the best interest of the child. In re William S. (1996), 75 Ohio St.3d 95,99. In determining whether permanent custody is in the best interest of a child, R.C. 2151.414(D) requires the juvenile court judge to consider all relevant factors, including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of [R.C. 2151.414(E)] apply in relation to the parents and child.
It is axiomatic that both the best interest determination and the determination that the child cannot be placed with either parent focus on the child, not the parent. Miller v. Miller (1988), 37 Ohio St.3d 71,75; In re Awkal (1994), 95 Ohio App.3d 309, 315. Indeed, R.C. 2151.414(C) expressly prohibits the court from considering the effect the granting of permanent custody to a children services agency would have upon the parents.
As this Court stated in In re Awkal, supra:
 R.C. 2151.414(D) is written broadly and requires the juvenile court judge to consider all factors that are relevant to the best interest of the child. The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as whether to terminate parental rights, privileges and responsibilities. The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. Moreover, the knowledge the juvenile court gains at the adjudicatory hearing through viewing the witnesses and observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony cannot be conveyed to a reviewing court by a printed record. * * * Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. Id. at 316 (citations omitted.)
With these standards in mind, we hold that the trial court did not abuse its discretion in granting permanent custody of appellant's children to CCDCFS.
In its journal entry filed January 4, 2000, the trial court held that the children could not be placed with appellant in a reasonable time and should not be placed with appellant because the following factors identified in R.C. 2151.414(E) applied:
 Following the placement of the children outside of the home, the parent has failed continuously and repeatedly for a period of six (6) months or more to substantially remedy the conditions causing the children to be placed outside the home.
 The parent is unable to provide an adequate permanent home for the children in the foreseeable future due to the mother has had a chronic drug problem, is emotionally and psychologically unstable, has no independent living skills and has a history of unstable employment.
 The parent has abused, neglected or allowed the children to be abused or neglected between the date of the filing of the complaint and the date of the filing of the motion for permanent custody.
 The parent has failed or refused to provide basic necessities, regular support, visit or communicate with the children when able to do so or by other actions, has shown an unwillingness to provide an adequate permanent home for the children.
The record supports the trial court's findings. First, contrary to appellant's argument, it is apparent that appellant failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. Parker testified that appellant had not presented her with any evidence that she had been attending weekly AA meetings or receiving ongoing counseling for her drug abuse, as required by the case plan. In addition, appellant was not attending individual counseling sessions regarding her victimization and anger management issues, as recommended in her psychological evaluation. Moreover, appellant had failed to obtain stable employment or housing, as required by her case plan. In the only ten months prior to trial, appellant's residence had changed three times. Furthermore, at the time of trial, she had not been employed since September.
The record also supports the trial court's finding that appellant had a chronic drug problem that would prevent the children from being placed with appellant. The record is clear that, contrary to appellant's testimony, appellant was using drugs again, one of the reasons the children were originally removed from appellant's care. Parker testified that appellant told her that she was using again and that appellant had not made herself available for random drug screening, presumably because she was, in fact, using drugs again. Flora Lovett also testified that appellant had told her in August, 1999 that she was using again.
The record also supports the trial court's finding that appellant had no independent living skills necessary to adequately care for her four children. The evidence was clear that appellant could not support herself, much less four children. Appellant was not able to maintain a job for any length of time. Moreover, appellant was clearly unable to maintain her own household; she always lived with various family members. Indeed, the arrangement appellant proposed was that she and her children live with Susan Schoenfeld for an indefinite time because, as appellant admitted, she was financially unable to provide for her children.
In sum, appellant's actions indicate, as the trial court found, an unwillingness to provide an adequate permanent home for her children. Accordingly, the trial court properly found that appellant's children could not and should not be placed with her.
Having so determined, the trial court was then required to consider the factors set forth in R.C. 2151.414(D) to determine whether granting permanent custody to CCDCFS was in the best interest of appellant's children.
With respect to the first factor — the interaction of the children with appellant, siblings and foster care parents — the evidence clearly indicated that the children's interaction with appellant proved to be detrimental to their emotional well-being. The record reflects that Parker testified at the emergency temporary custody hearing that appellant began visiting the children in January, 1999 after she informed CCDCFS that she wished to be reunited with the children. Parker described the children as leery of visiting with appellant, however, and testified that they did not want to visit with her and had to be convinced to do so. Subsequently, CCDCFS stopped allowing appellant to speak with her children over the telephone because she would make inappropriate comments to them, such as telling them not to listen to their foster mother. Parker also testified that during appellant's visits with her children, CCDCFS personnel observed inappropriate parenting behavior by appellant. For example, appellant would place Brendan, the oldest child, in a parental role, asking that he care for and discipline the other children.
The guardian ad litem similarly informed the court that the children's interaction with appellant was detrimental to their well-being. In his written report to the court, the guardian ad litem stated:
 The evidence at trial showed that these children are exhibiting severe behavioral problems. Based upon my observations of Yvonne and the children, my interviews with the children, and my interviews with the caseworkers, * * * I conclude that the children's behavioral problems are exacerbated by contact with their mother.
The evidence also established that the children were in a stable and caring foster care environment and were responding well in their foster home. Parker testified that the children initially exhibited severe behavioral problems upon being placed in the Lovett's foster home. She testified further, however, that after receiving intensive counseling, their behavior had greatly improved and they had adjusted positively to their new environment.
With respect to the second factor — the wishes of the child, as expressed through the guardian ad litem — the record reflects that the guardian ad litem recommended that permanent custody by granted to CCDCFS. In his written report to the court, the guardian ad litem stated:
 The children have been in the same foster home since January of 1999. They are in a stable environment and are in counseling. I do not believe that it is in their best interest to be returned to their mother. I do not believe that Yvonne has overcome her substance abuse problem. I do not believe that she has exercised sound judgment and maturity in her interaction with the children. * * * I do not believe that Yvonne has the independent living skills needed to care for her children. It is in the best interest of these children that permanent custody be granted to CCDCFS.
The custodial history of the children and their need for a legally secure permanent placement — the third factor set forth in R.C.2151.414(D) — indicates that after 1992, the children were never reunited with appellant, but were placed with various relatives. Thus, the children had a long history of custodial care with persons other than appellant. At the time of trial, however, the children had been in the same foster home for approximately ten months and were adapting well to that environment. Furthermore, the foster parents were willing to adopt the children.
Finally, the evidence was clear that all of the children had special emotional and psychological needs that appellant could not attend to.
Accordingly, the trial court did not err in determining that it was in the best interest of the children to grant permanent custody to CCDCFS. Appellant's first assignment of error is overruled.
In her second assignment of error, appellant contends that CCDCFS demonstrated that it was not committed to reuniting appellant with her children, in violation of R.C. 2153.353, because it facilitated appellant's signing of the document in which appellant stated that she was permanently relinquishing her rights to her children. In her third assignment of error, appellant contends that appellee's agents unduly influenced her to sign the document, thereby denying her due process of law. We consider these assignments of error together because they are related. We find no merit to appellant's arguments.
First, the validity of the document and the circumstances surrounding appellant's signature on the document were not at issue at trial. At the hearing on February 29, 1999, counsel for appellant informed the trial court that appellant wished to recant the statement that she had signed on August 30, 1999. Counsel for CCDCFS and appellant then agreed, and the trial court ordered, that appellant be allowed to retract her statement and proceed to trial on the complaint of CCDCFS for permanent custody. Accordingly, whether CCDCFS facilitated appellant's signature on the document was not relevant to the permanent custody issue at trial.
Moreover, the record reflects that at trial, counsel for appellant made no motion to exclude evidence regarding the document nor did he object even once to testimony regarding the document. Counsel for appellant did not object when counsel for CDDCFS questioned Parker on direct examination regarding the circumstances surrounding appellant's signature on the document and, in fact, he questioned Parker on cross-examination regarding the document. Furthermore, counsel for appellant also questioned appellant extensively on direct examination regarding the circumstances concerning her signature on the document.
It is axiomatic that issues not presented for consideration below will not be considered by this court on appeal. Shover v. Cordis Corp. (1991), 61 Ohio St.3d 213, 220. Accordingly, appellant has waived her due process and other arguments regarding the document.
Appellant's second and third assignments of error are overruled.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and PATRICIA A. BLACKMON, J., CONCUR.
 _____________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE